UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| CODY ALAN KING, | ) | |
| | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-CV-193 |
| | ) | |
| COFFEE COUNTY MAYOR, SHERIFF | ) | Judge Curtis L. Collier |
| CHAD PARTIN, FRANK WATKINS, | ) | |
| JENNIFER GREEN, LT. TAMMY | ) | |
| WARREN, OFFICE OF COFFEE | ) | |
| COUNTY/MANCHESTER | ) | |
| COMMISSIONER, and OFFICE OF | ) | |
| COFFEE COUNTY/MANCHESTER | ) | |
| TREASURER, | ) | |
| | ) | |
|     *Defendants*. | ) | |

**MEMORANDUM & ORDER**

Plaintiff, a prisoner housed in the Coffee County Jail, filed a pro se civil rights action under 42 U.S.C. § 1983 (Doc. 2) and a motion for leave to proceed *in forma pauperis* (Doc. 1). For the reasons set forth below, the Court will grant Plaintiff's motion to proceed *in forma pauperis*, allow Plaintiff to proceed on a conditions-of-confinement claim against Defendants Partin, Watkins, and Warren, permit Plaintiff to file an amended complaint if he desires to pursue a denial-of-medical-care claim, and dismiss the remaining claims and Defendants.

I.  **MOTION TO PROCEED *IN FORMA PAUPERIS***

It appears from Plaintiff's motion to proceed *in forma pauperis* (Doc. 1) that he lacks the financial resources to pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, this motion will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 900 Georgia

Avenue, Suite 309, Chattanooga, Tennessee 37402, twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined. The Clerk will also be **DIRECTED** to furnish a copy of this Memorandum and Order to the Court's financial deputy. This Memorandum and Order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

II.     SCREENING OF COMPLAINT

    A.     **Screening Standard**

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. 42 U.S.C. § 1983; *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "[s]ection 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

B.    **Plaintiff's Allegations**

Plaintiff is an inmate in the custody of the Tennessee Department of Correction[1] ("TDOC") currently housed in the Coffee County Jail. (Doc. 2 at 3.) Plaintiff complains that the Coffee County Sheriff's Department and the Coffee County Jail (1) have shown favoritism to an inmate who molested Plaintiff's daughter because he is a former police officer; (2) completely removed inmates' commissary privileges; (3) provide inadequate food portions, which has caused Plaintiff

---

[1] Plaintiff does not disclose his custodial status in his complaint, but the Court takes judicial notice that he is listed as a convicted prisoner by the Tennessee Department of Correction's publicly available offender database. *See* Tenn. Dep't of Corr., *Felony Offender Information*, https://foil.app.tn.gov/foil/search.jsp (last visited June 12, 2024) (search by name); *see also* Fed. R. Evid. 902(5) (providing that "official publications" are self-authenticating); *Oak Ridge Env't Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 n.6 (E.D. Tenn. 2019) ("Information taken from government websites is self-authenticating under Fed. R. Evid. 902, and courts may accordingly take judicial notice of the information found on these websites." (citations omitted)).

3

to lose forty (40) pounds in approximately four months; (4) force most inmates "to eat inside their cells where the toilets are[,]" even though there are tables in the pod; (5) allow inmates to be served food on trays that have black mold on them; and (6) only give inmates one set of clothes, and "it takes days or weeks to get [fresh laundry]" if fresh laundry is received at all. (Doc. 2 at 5–6.)

Plaintiff also alleges that on February 5, 2024, he choked on a piece of plastic that was "balled up in [his] food." (*Id*. at 7.) Plaintiff asked for a photograph to document the incident, but Officer Meeks "was more worried about [Plaintiff] not getting another tray than [his] personal physical safety." (*Id*.) The grievance Plaintiff submitted about the incident "disappeared from the kiosk." (*Id*.)

On April 13, 2024, Plaintiff was served a dinner tray that had a rock mixed in with the beans. (*Id*.) Plaintiff broke a molar on the rock and has been in pain since. (*Id*.) He is given Ibuprofen or Tylenol for a week at a time, but then he has "to be off meds for a week before [he] gets more." (*Id*.) Plaintiff has asked to see a doctor, but that request has been denied. (*Id*.) No photographic evidence was preserved regarding this incident, although Officer Lovett did make a report to document it. (*Id*.)

On April 19, 2024, Plaintiff was served a breakfast tray with a hair in it. (*Id*.) Plaintiff showed it to Officer Morrison, who took the tray and informed Plaintiff he would get a replacement tray. (*Id*.) But Plaintiff never received a replacement tray. (*Id*.)

Between mid-January and March 2024, the ventilation and heating system was not working in Plaintiff's unit. (*Id*. at 8.) It snowed during this period, and the temperature "fell to ten below zero and stayed at or around that temp[e]rature for weeks." (*Id*.) Sheriff Chad Partin, Jail Administrator Tammy Warren, and Chief Deputy Frank Watkins put heaters in the unit "and passed out extra blankets[,]" but it was still so cold in the unit that water froze in some of the

4

toilets. (*Id*.) The extreme cold "forced inmates to huddle up close to the heater[,] which le[]d to burns." (*Id*.)

Aggrieved by these circumstances, Plaintiff filed the instant suit against the Coffee County Mayor, Sheriff Chad Partin, Frank Watkins, Jennifer Green, Lt. Tammy Warren, the Office of Coffee County/Manchester Commissioner, and the Office of Coffee County/Manchester Treasurer asking the Court to order the improvement of conditions in the Coffee County Jail, reprimand the responsible parties, and award him monetary damages for his pain and suffering. (*Id*. at 9.)

### C. Analysis

#### 1. Conditions of Confinement

Most of Plaintiff's claims involve challenges to the conditions of his confinement. While inmates are not guaranteed "comfortable prisons," they are protected against "inhumane ones," and "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id*. (quoting *Farmer*, 511 U.S. at 828).

The deliberate-indifference inquiry consists of two parts. *Id*. at 839–40 (citations omitted). First, the objective prong requires an inmate to show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. at 840 (quoting *Farmer*, 511 U.S. at 834). Second, the subjective prong requires that "an official must 'know of and disregard an excessive risk to inmate health or safety.'" *Id*. (alterations omitted) (quoting *Farmer*, 511 U.S. at 837).

But "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Instead, "routine discomfort is 'part of the penalty that

5

criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Thus, only "extreme deprivations" that deny a prisoner "the minimal civilized measure of life's necessities" violate a prisoner's rights under the Eighth Amendment. *Id*. (citations and internal quotation marks omitted). In examining such claims, the court must determine whether the risk of which the plaintiff complains is "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993); *see also Rhodes*, 452 U.S. at 347.

First, the Court finds Plaintiff's allegations regarding the food he is served at the Coffee County Jail fails to state a constitutional claim. The fact that Plaintiff found a rock, a piece of plastic, and a hair in his food on three separate occasions over a two-month period does not violate the Eighth Amendment. *See, e.g., Smith v. Younger*, No. 98-5482, 1999 WL 623355, at *2 ("The fact that the [prison] food occasionally contains foreign objects . . . while unpleasant, does not amount to a constitutional deprivation." (citing *Hamm v. Dekalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985))). Plaintiff is entitled only to sufficient adequate nutrition to maintain good health. *Cunningham v. Jones*, 567 F.2d 653, 659–60 (6th Cir. 1977) (providing that where a prisoner's diet is sufficient to sustain the prisoner's good health, no constitutional right has been violated). And while Plaintiff alleges that he has lost forty (40) pounds while housed in the Coffee County Jail, he did not disclose his beginning weight or current weight. Therefore, the Court cannot find on the facts alleged that Plaintiff's weight loss has rendered him malnourished. *See Adams v. Hardin Cnty. Det. Center*, No. 3:16-CV-P29-CRS, 2016 WL 2858911, at *6 (W.D. Ky May 12, 2016) (noting that "[c]ourts have generally held that allegations of weight loss alone fall short of

6

stating an Eighth Amendment claim") (citations omitted). As such, these claims will be **DISMISSED**.

Second, Plaintiff's claim that some of the food trays have black mold on them fails to state a cognizable claim, because the mere presence of non-airborne mold is not a sufficiently serious condition to state an Eighth Amendment claim. *See, e.g., Rogers v. Maclaren*, No. 1:20-CV-263, 2020 WL 3481541, at *8 (W.D. Mich. June 26, 2020) (holding presence of black mold on shower floor failed to state Eighth Amendment claim absent allegations that the mold created health problems or created a substantial risk to health). Thus, this claim will be **DISMISSED**.

Third, Plaintiff's allegation that inmates must eat in their cells near the toilet is not sufficiently serious to invoke constitutional protections. *Baggett v. Fuson*, No. 3:14-CV-02366, 2015 WL 328348, at *2 (M.D. Tenn. Jan. 23, 2015) ("With regard to the plaintiffs' claims that they are forced to eat their meals in their cells near toilets. . . the Constitution does not protect a prisoner from unpleasant prison experiences." (citing *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir.1987))). Accordingly, this claim will be **DISMISSED**.

Fourth, Plaintiff's claim that inmates are only allowed one set of clothes, and that it takes "days or weeks" to get "fresh clothes"–without more–is not an "extreme deprivation" that will state an Eighth Amendment claim. *Harben-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir 2008) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). In the Sixth Circuit, "a prisoner's claim of denial of clean clothes for a brief time fails to state an Eighth Amendment violation." *Bostic v. Mehr*, No. 20-1031-SHM-cgc, 2021 WL 5999305, at *5 (W.D. Tenn, Dec. 20, 2021) (citing *Walker v. State Dep't of Corr.*, No. 98-6586, 2000 WL 32057, *1–2 (6th Cir. Jan. 7, 2000)); *see also Wright v. Gregory*, No. 1:21-cv-P79-GNS, 2021 WL 4037594, at *4 (W.D. Ky. Sept. 3, 2021) ("[T]he temporary inconvenience of . . . not having clean clothes . . . during Plaintiff's nine-day placement in segregation fails to state a claim upon which relief may be granted."). Plaintiff does

7

not advance any facts suggesting that he personally has been forced to wear dirty clothes for an extended period, or that he has suffered any adverse consequences as a result of not having more regular laundry services. Therefore, this claim will be **DISMISSED**. *See Moore v. Chavez*, 36 F. App'x 169, 171 (6th Cir. 2002) (finding inmate who failed to allege "extreme discomfort" or complete denial of "basic elements of hygiene" did not state Eighth Amendment claim).

Fifth, the Court considers Plaintiff's claim that he was housed in very cold temperatures between mid-January and early March 2024. An inmate's exposure to extreme temperatures may violate the Eighth Amendment. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991). The Supreme Court has held that "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *See id*. Some factors to consider when determining whether an inmate's exposure to extreme cold is unconstitutional include the severity of the cold, its duration, whether there were alternative means of protection from the cold, the adequacy of the alternative means, and whether the inmate had to endure other unfavorable conditions in addition to the cold. *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997).

Plaintiff maintains that the heating system was inoperable at the Coffee County Jail in his unit for approximately six weeks, and that during this period, the temperature "fell to ten below zero and stayed at or around that temp[e]rature for weeks." (Doc. 2 at 8.) Plaintiff concedes that the inmates were provided with extra blankets, and that heaters were brought into the unit. (*Id*.) But he alleges that the measures taken by Sheriff Partin, Jail Administrator Warren, and Chief Deputy Watkins failed to alleviate the extreme conditions. Specifically, he alleges that it remained so cold in the unit that water froze in some of the toilets, and that those conditions endured for

8

Case 1:24-cv-00193-CLC-CHS   Document 5   Filed 06/24/24   Page 8 of 13   PageID #: 28

weeks. (*See* Doc. 12 at 8.) Therefore, at this state of the proceedings, the Court finds Plaintiff has stated a plausible conditions-of-confinement claim regarding the temperature in his housing unit, and this claim will **PROCEED** against Defendants Partin, Warren, and Watkins.

2. **Due Process**

Plaintiff claims that Defendants have taken "commissary completely out of the jail." (Doc. 2 at 6.) To state a cognizable constitutional claim for the denial of commissary privileges, Plaintiff must demonstrate that his interest in these privileges and programs is a liberty interest protected by the Due Process Clause. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."). To establish such an interest, Plaintiff must show that being deprived of that right or interest imposes on him an "atypical and significant hardship" relative to the ordinary circumstances of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). But prisoners do not possess a liberty interest in commissary privileges. *See Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996) ("[W]e know of no constitutional right of access to a prison gift or snack shop."); *Adams*, 2016 WL 2858911, at *3 (holding prisoner has "no federal constitutional right to purchase items (food or non-food) from a commissary at all"). Accordingly, Plaintiff's claim regarding the denial of commissary privileges will be **DISMISSED**.

3. **Equal Protection**

Plaintiff maintains that the Coffee County Jail "is showing favor[i]tism toward the man who molested [his] daughter" and implies that the inmate should be, but is not, housed "in a separate special unit." (Doc. 2 at 5–6.) This allegation implicates the Equal Protection Clause, which provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. It is "essentially a direction that all persons

9

Case 1:24-cv-00193-CLC-CHS   Document 5   Filed 06/24/24   Page 9 of 13   PageID #: 29

similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). To adequately plead an equal protection claim, a litigant must allege that the government is intentionally treating him differently "as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)). Here, Plaintiff pleads no facts that would implicate his equal protection rights. The mere allegation that another inmate was treated more favorably fails to state an equal protection claim. *See e.g., Hines v. Smith*, No. 04 Civ.5903(PAC), 2006 WL 2038454, at *6–7 (S.D.N.Y. July 17, 2006). Therefore, the Court will **DISMISS** this claim.

### 4. Medical Care

Plaintiff maintains that medical staff refuse to allow him to see a doctor for his broken tooth, and that he experiences ongoing pain for which he is only allowed pain medication every other week. (Doc. 2 at 7.) The Eighth Amendment prohibits deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). To state a claim for deliberate indifference to his medical needs, Plaintiff must show that one or more Defendants "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

The Court assumes that a broken tooth is a serious medical need. *See McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008) (noting that dental needs fall into the category "of serious medical needs" because "[d]ental care is one of the most important needs of inmates"). But Plaintiff does not allege when he sought treatment for his broken tooth or from whom such

10

Case 1:24-cv-00193-CLC-CHS   Document 5   Filed 06/24/24   Page 10 of 13   PageID #: 30

treatment was sought. And none of the named Defendants appear to be members of the medical staff at the Coffee County Jail. Accordingly, the Court will **DISMISS** this claim but **PERMIT** Plaintiff to file an amended complaint that contains sufficient factual detail to set forth a plausible claim against an identifiable Defendant.

Therefore, **if** Plaintiff wishes to further pursue this claim, he is **ORDERED** to file an amended complaint by July 17, 2024, with a short and plain statement of facts setting forth how Plaintiff his constitutional rights were violated, who engaged in the conduct that purportedly violated Plaintiff's rights, and any injury that resulted. The Clerk will be **DIRECTED** to mail Plaintiff a § 1983 form for this purpose. Plaintiff should complete and return this form **only** if he desires to amend his complaint to pursue a denial-of-medical-care claim.

Plaintiff is **NOTIFIED** that the Court will only address the merits of Plaintiff's claims that relate to his original complaint. Accordingly, Plaintiff **SHALL NOT** attempt to set forth in his amended complaint any additional claims that do not relate to his original complaint, and he is advised that any such claims will be **DISMISSED**. Further, Plaintiff is **NOTIFIED** that this amended complaint will be the sole operative complaint that the Court considers, and therefore, it **must** be complete in and of itself and must not refer to any previously filed allegations or pleadings. Therefore, in addition to setting forth the facts surrounding his denial-of-medical-care claim, Plaintiff **must also** include the allegations forming the basis of his conditions-of-confinement claim based on the extreme cold in his cell if he intends to continue pursuing that claim.

### 5. Defendants to be Dismissed

To state a claim against any individual Defendant, Plaintiff must adequately plead that the particular Defendant, through his or her own actions, has violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a

11

complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). Plaintiff's complaint advances no allegations against Defendants Coffee County Mayor, Jennifer Green, Office of Coffee County/Manchester Commissioner, or Office of Coffee County Manchester Treasurer, and these Defendants will be **DISMISSED**.

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's application for leave to proceed *in forma pauperis* (Doc. 1) is **GRANTED**;

2. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

3. The Clerk is **DIRECTED** to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

4. Plaintiff's conditions-of-confinement claim regarding cold temperatures in his cell will **PROCEED** against Defendants Partin, Watkins, and Warren;

5. The Clerk is **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Partin, Watkins, and Warren;

6. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office by July 17, 2024;

7. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service pursuant to Fed. R. Civ. P. 4;

8. Plaintiff is **NOTIFIED** that if he fails to timely return the completed service packets, this action will be dismissed;

9. Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, it may result in entry of judgment by default against that Defendant;

10. All remaining claims and Defendants are hereby **DISMISSED**;

11. On or before July 17, 2024, Plaintiff must file a comprehensive amended complaint in accordance with the directives above **only if** he desires to pursue a claim for the

denial of medical care. The Clerk is **DIRECTED** to send Plaintiff a § 1983 form for this purpose; and

12. Plaintiff must immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED.**

**ENTER:**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**