# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| CODY ALAN KING,<br>  *Plaintiff*,<br><br>v.<br><br>SHERIFF CHAD PARTIN,<br>FRANK WATKINS, and<br>LT. TAMMY WARREN,<br>  *Defendants*. | )<br>)<br>)<br>)<br>) No. 1:24-cv-193-CHS<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

  This matter is before the Court upon Defendants' Motion for Summary Judgment [Doc. 24], which is accompanied by exhibits [Doc. 24-1 to Doc. 24-14] and a supporting Memorandum [Doc. 25]. By way of background, Plaintiff, a former prisoner housed at the Coffee County Jail at all relevant times, was permitted to proceed in this civil rights action under 42 U.S.C. § 1983 on a claim that Sheriff Partin, Chief Watkins, and Jail Administrator Warren ("Defendants") subjected him to unconstitutional conditions of confinement between January and March 2024 by housing him in extreme temperatures after the ventilation and heating systems at the Coffee County Jail failed [*See* Doc. 5 p. 8–9, 12]. Plaintiff failed to file a response to Defendants' summary judgment motion, and the deadline to do so has passed. *See* E.D. Tenn. L.R. 7.1. Consistent with the Court's Local Rules, the Court finds Plaintiff has waived opposition to the relief sought by Defendants. *See* E.D. Tenn. L.R. 7.2. Further, upon consideration of the Parties' pleadings, the evidence presented, and the applicable law, the Court finds Defendants' Motion [Doc. 24] should be **GRANTED** and this action **DISMISSED**.

I.  **Summary Judgment Standard**

Summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Further, a plaintiff's failure to exhaust remedies is an affirmative defense for which a defendant bears the burden of proof. *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012). And "[i]n cases where the party moving for summary judgment also bears the burden of persuasion at trial, the party's initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Id.* at 455–56 (citing *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (internal quotation marks omitted)). Accordingly, when non-exhaustion of remedies is raised as a defense, "[s]ummary judgment is appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Id.* at 456 (citing *Risher v. Lappin*, 649 F.3d 236, 240 (6th Cir. 2011)).

II.  **Undisputed Facts** [1]

Plaintiff was held in the Coffee County Jail as a convicted prisoner[2] beginning December 21, 2023 [Doc. 24-1; Doc. 24-2 p. 2]. From around January 10, 2024, through January 24, 2024, the heating unit in the A-pod cell blocks stopped functioning properly [Doc. 24-3 ¶ 13; Doc. 24-

---

[1] Plaintiff did not respond to Defendant's Motion. "When a nonmoving party fails to respond to a summary judgment motion in the time frame set by the local rules, district courts in the Sixth Circuit have largely consider[ed] the [moving party's] statement of material facts to be undisputed for purposes of the instant motion of summary judgment." *Jones v. City of Franklin*, 677 F. App'x 279, 285 (6th Cir. 2017) (quotation omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to . . . properly address another party's assertion of facts . . . the court may . . . consider the fact undisputed for purposes of the motion[.]").

[2] Plaintiff's parole was revoked for a violation [Doc. 24-2 p. 2].

4]. Also during this time, Coffee County experienced a severe winter storm and cold front from around January 14 through January 22, 2024, with outdoor temperature lows ranging from 22 degrees Fahrenheit to -7 degrees Fahrenheit [Doc. 24-5; Doc. 24-6].

Plaintiff was housed in cell block AB on January 10, 2024 [Doc. 24-1 p. 3]. Defendant Warren put in a repair order for the heating unit as soon as it became apparent that the unit was not functioning properly [Doc. 24-3 ¶¶ 13, 14; Doc. 24-4]. On January 11, 2024, an HVAC technician came to service the unit [Doc. 24-4]. The unit began functioning again but stopped functioning properly sometime thereafter [Doc. 24-3 ¶¶ 15, 16; Doc. 24-4]. Jail officials had two HVAC technicians return to service the unit on January 12, 2024 [Doc. 24-3 ¶ 17; Doc. 24-4]. One technician noted that the control/ignition module needed to be replaced [Doc. 24-3 ¶ 17]. An order was placed for a new control/ignition module the same day [*Id.* ¶ 18]. But because the part was being sourced from Texas, a combination of the distance, shipping delays, and weather conditions resulted in the part arriving two weeks later [Doc. 24-2 p. 5, 19; Doc. 24-3 ¶ 18; Doc. 24-4; *see also* Doc. 24-6]. The HVAC technician returned to replace the control/ignition module when it arrived on January 24, 2024 [Docs. 24-3 ¶¶ 18, 28; Doc. 24-4]. The heating in all cell blocks of the Coffee County Jail returned to normal temperatures at that point [Doc. 24-7; *see also* Doc. 24-3 ¶ 28].

While the heating unit was not functioning, Coffee County jail officials, including Defendants, made efforts to ensure inmates were protected from the cold conditions [Doc. 24-3 ¶¶ 19–22, 24; Doc. 24-8 ¶¶ 8–11, 13; Doc. 24-9 ¶¶7–13, 15]. On January 13, 2024, within one day of ascertaining that the heating system was indefinitely down, all inmates housed in AB were moved to either block AA or block AC, which were less affected [Doc. 24-2 p. 6; Doc. 24-3 ¶¶ 22, 23; Doc. 24-8 ¶¶ 11, 12; Doc. 24-9 ¶¶ 13, 14]. Plaintiff was in the group moved to block AC, and he

remained there until March 4, 2024 [Doc. 24-1 p. 3–4]. On January 14, 2024, the morning after learning the system was down indefinitely, Sheriff Partin purchased alternative portable heat sources, such as patio heaters and bullet heaters, some of which were put into cell block AC to supplement the heat [Doc. 24-2 p. 7; Doc. 24-9 ¶ 8; Doc. 24-10]. The inmates in block AC were given permission to bring mats to sit next to the portable heaters. Further, the inner cell doors were left open to allow them to do so and to allow warm air to circulate through the cell block [Doc. 24-2 p. 7; Doc. 24-3 ¶ 24; Doc. 24-8 ¶ 13]. Inmates in the affected cell blocks were also provided with extra blankets [Doc. 2 p. 8; Doc. 24-2 p. 9; Doc. 24-3 ¶ 20; Doc. 24-8 ¶ 9].

It is a typical practice in the Coffee County Jail to record cell block temperature daily to ensure inmates are housed in appropriate temperatures [Doc. 24-3 ¶ 8; Doc. 24-7; Doc. 24-8 ¶ 6; Doc. 24-9 ¶ 5]. Tennessee Corrections Institute ("TCI") Minimum Standards for Local Adult Correctional Facilities sets the minimum temperature requirements for sleeping and activity areas in Tennessee jails at sixty-five (65) degrees Fahrenheit [Doc. 24-11 p. 14; *see also, e.g.,* Doc. 24-3 ¶ 7]. The lowest recorded temperature in cell block AC occurred on January 17, 2024, at 61.8 degrees Fahrenheit [Doc. 24-7 p. 40]. This was the date on which the outside temperature in Coffee County reached -7 degrees Fahrenheit [Doc. 24-5; Doc. 24-12].

The coldest temperatures Plaintiff was possibly exposed to occurred on January 10, when the recorded temperature was 58.2 degrees, and January 12, 2024, when the recorded temperature was 60.1 degrees [Doc. 24-3 ¶ 12; Doc. 24-7 p. 39, 43]. These temperatures were recorded on the day it was discovered that the heating unit was malfunctioning (January 10) and the day it was discovered that the unit would be down indefinitely (January 12) [Doc. 24-3 ¶ 12; Doc. 24-4; Doc. 24-7 p. 39, 43]. During the relevant time in which the heating unit in the A pods was down, the temperatures in block AC only went below 65 degrees Fahrenheit four times: 64.6 degrees on

4

January 12; 62.8 degrees on January 14; 61.8 degrees on January 17; and 64.3 degrees on January 18 [Doc. 24-7 p. 43, 41, 40, 37]. By January 22, 2024, temperatures in all A pod cell blocks were consistently above 65 degrees, and by January 24, 2024, the heating unit was repaired [Doc. 24-3 ¶ 28; Doc. 24-4; Doc. 24-7; Doc. 24-8 ¶¶ 17, 18; Doc. 24-9 ¶ 19]. After the heating unit was repaired, temperatures in block AC did not fall below 65 degrees Fahrenheit for the remainder of the 2024 winter [*See* Doc. 24-7]. At no point did temperatures ever drop low enough for water in the pipes or toilets to freeze [Doc. 24-3 ¶ 27; Doc. 24-7; Doc. 24-8 ¶ 16; Doc. 24-9 ¶ 18].

Plaintiff did not suffer any burns or injury from the heaters [Doc. 24-2 p. 17]. He did not sustain any physical injury or illness from the temporarily cold conditions in A pod [Doc. 24-2 p. 21–22; Doc. 24-13]. Plaintiff did not file any inmate grievances pertaining to cold cell temperatures during this, or any other, period [Doc. 24-14; *see also* Doc. 24-3 ¶ 4]. Neither did Plaintiff file any grievances directed toward Defendants [Doc. 24-14; Doc. 24-3 ¶ 5].

### III. Law and Analysis

Defendants contend that they are entitled to judgment as a matter of law because: (1) Plaintiff cannot establish a prima facie case that his conditions of confinement violated the Eighth Amendment; (2) Defendants are entitled to qualified immunity; and (3) Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), prior to filing suit [*See* Doc. 25]. Although Plaintiff did not respond to Defendants' Motion, he filed his Complaint under penalty of perjury [Doc. 2 p. 9]. Therefore, the Court treats his verified Complaint as an opposing affidavit. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (recognizing that a "verified complaint . . . carries the same weight as would an affidavit for the purposes of summary judgment").

The Court will first address the issue of exhaustion of remedies before turning to the merits of Plaintiff's conditions-of-confinement claim. Because the Court resolves this case on those two issues, it declines to address Defendants' qualified immunity defense.

**A. Exhaustion of Remedies**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The requirements of exhaustion are not set out in the PLRA itself. Rather, to satisfy the exhaustion requirement, an inmate must properly complete the grievance procedures put forward by his correctional institution, including any procedural rules and deadlines. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Jones v. Bock*, 549 U.S. 199, 218 (2007) ("It is the prison's requirements . . . that define the boundaries of proper exhaustion."). Moreover, exhaustion is mandatory, regardless of the type of relief sought, or whether such relief can be granted through the administrative process. *See Ross v. Blake*, 578 U.S. 632, 641 (2016). Therefore, "exhaustion is required even if the prisoner subjectively believes the remedy is not available; even when the state cannot grant the particular relief requested; and 'even where [the prisoners] believe the procedure to be ineffectual or futile[.]'" *Napier v. Laurel Cnty.,* 636 F.3d 218, 222 (6th Cir. 2011) (internal citations and citations omitted).

In his Complaint, Plaintiff alleges that he "talked to s[e]rge[a]nts and filed several grievances pertaining to all wrong doings" raised in his Complaint, but that the result was "deleted grievances and little or no action by institution authorities" [Doc. 2 p. 3]. However, Plaintiff has not disputed that his grievance history does not contain any grievance regarding cold cell conditions [Doc. 24-14; *see also* Doc. 24-3 ¶¶ 4, 5, 6]. And Plaintiff's "conclusory allegation[] . .

6

Case 1:24-cv-00193-CHS   Document 26   Filed 12/29/25   Page 6 of 11   PageID #: 297

. and unsubstantiated assertion[]" that he filed grievances on "all wrongdoings" raised in his Complaint is "not sufficient to defeat [Defendant's] well-supported motion for summary judgment."[3] *Jones*, 677 F. App'x at 282; *see also Williams v. Browman*, 981 F.2d 901, 904 (6th Cir. 1992) (finding that for evidentiary purposes, plaintiff's verified complaint, which contained "nothing but mere conclusory allegations" could not survive a motion for summary judgment" in favor of the defendants); *Meeks v. Schofield*, 10 F. Supp. 3d 774, 784 (M.D. Tenn. 2014) ("Accordingly, speculative and conclusory allegations, even if made within a verified complaint, are insufficient to withstand a motion for summary judgment."). Therefore, there is no genuine issue of material fact controverting Plaintiff's failure to exhaust his available administrative remedies regarding cell temperatures prior to filing this action. Consequently, Defendants are entitled to summary judgment.

## B. Merits

Although not critical to the disposition of this case considering the Court's exhaustion ruling, the Court also finds that the undisputed material facts demonstrate that Defendants did not violate Plaintiff's right to constitutionally mandated conditions of confinement, and that Plaintiff has not come forward with evidence demonstrating a jury could reasonably find in his favor. *See Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (noting a "mere existence of scintilla of evidence" in support of non-moving party's position will not defeat a motion for summary judgment; there must be evidence from which a jury could find for the non-movant (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986))).

---

[3] Plaintiff alleges that two of his grievances "disappeared" during his incarceration at the Coffee County Jail, but these pertained to plastic in his food and a tooth injury due to a pebble in his food [Doc. 24-2 p. 3–4]. He does not allege that the disappeared grievances pertained to cell temperatures [*Id.*].

7

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id*. (quoting *Farmer*, 511 U.S. at 828).

The deliberate-indifference inquiry consists of a two-part framework. *Id*. at 839–40 (citations omitted). That framework contains an objective component and a subjective component. *Id*. at 840. The objective component requires an inmate to show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. at 840 (quoting *Farmer*, 511 U.S. at 834). Only "extreme deprivations" that deny a prisoner "the minimal civilized measure of life's necessities" satisfy this component. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations and internal quotation marks omitted). The subjective component requires that "an official must 'know of and disregard an excessive risk to inmate health or safety.'" *Id*. (alterations omitted) (quoting *Farmer*, 511 U.S. at 837).

Plaintiff cannot satisfy the objective component of deliberate indifference. Cold conditions alone are generally insufficient to meet this standard, particularly where prison officials make efforts to alleviate the cold conditions, the cold is not extreme, and the conditions are of a short duration. *See, e.g., Wells v. Jefferson Cnty. Sheriff Dep't*, 35 F. App'x. 142, 143 (6th Cir. 2002) (finding inmate's six-day stay in cold cell sleeping on a mattress on the floor is not an Eighth Amendment violation); *Chilton v. Walters*, No. 3:21-CV-1312, 2022 WL 541193, at *3 (N.D. Ohio Feb. 23, 2022) (citing federal cases holding that "being subject to cold temperatures for a relatively short duration does not violate the Eighth Amendment); *Powell v. Woodard*, No. 16-1007-JDT-cgc, 2017 WL 4171988, at *6 (W.D. Tenn. Sept. 20, 2017) (holding cold conditions sufficient to

force inmate to wear a coat did not violate Eighth Amendment violation where no injury resulted); *Stradley v. Mich. Dep't of Corr.*, No. 1:15-CV-896, 2015 WL 6758826, at *6 (W.D. Mich. Nov. 5, 2015) (citing federal cases finding "short-term exposure to the cold generally does not rise to the level of an Eighth Amendment violation" and noting Plaintiff was provided with clothing, sheets, and a blanket during relevant period); *Taylor v. Boyd*, No. 06-2412-JMP-dvk, 2008 WL 3852184, at *8 (W.D. Tenn. Aug. 15, 2008) (finding inmate's Eighth Amendment rights were not violated merely because he subjectively felt cold); *Cf. Spencer v. Bouchard*, 449 F.3d 721, 729 (6th Cir. 2006) (finding an Eighth Amendment violation where the cold and wet conditions were prolonged, officers failed to take reasonable measures to abate the cold for the inmates, and officers actively interfered with inmates' own attempts to alleviate the cold).

The record evidence demonstrates that the coldest temperature Plaintiff may have been exposed to was 58.2 degrees Fahrenheit for less than one day [Doc. 24-3 ¶ 12; Doc. 24-7 p. 39, 43]. And he was only exposed to temperatures below 65 degrees Fahrenheit for a total of five nonconsecutive days [Doc. 24-7 p. 37, 40, 41, 43]. Even then, Plaintiff had access to extra blankets and the ability to leave his cell to sit near a portable heating unit [Doc. 2 p. 8; Doc. 24-2 p. 7, 9; Doc. 24-3 ¶ 13, 20; Doc. 24-9 ¶¶12, 15; Doc. 24-10]. Accordingly, the competent summary judgment evidence shows that Plaintiff was not exposed to harmful temperatures, and that his feelings of discomfort alone are insufficient to amount of an extreme deprivation that would establish the objective component. *See, e.g., Taylor v. Boyd*, 2008 WL 3852184 (holding subjective feelings of discomfort and cold are insufficient to make out an Eighth Amendment violation and plaintiff must present "evidence indicating that the cells were objectively so cold as

to present a health risk to the persons confined in them"). Thus, there is no genuine dispute whether Plaintiff can establish the objective component of deliberate indifference.[4]

Plaintiff also cannot demonstrate the subjective component of deliberate indifference. The evidence demonstrates that prison officials did, in fact, perceive facts from which they inferred a substantial risk to Plaintiff and other inmates [*See, e.g.*, Doc. 24-3 ¶ 9; Doc. 24-4; Doc.24-8; Doc. 24-9]. But Plaintiff cannot establish that any Defendant disregarded this risk. Officials had an HVAC technician come to repair the heating unit the day after learning it was malfunctioning [Doc. 24-3 ¶¶ 13, 15; Doc. 24-4]. And when they realized the following day that the unit began to malfunction again, they again contacted HVAC technicians and learned that the heat would be out until a part came in to repair it [Doc. 24-3 ¶¶16, 17; Doc. 24-4]. Defendants immediately acted when they learned that the heating unit had failed. Specifically, they provided Plaintiff (and other inmates) with extra blankets; moved Plaintiff to block AC, which was less affected; provided portable heaters to block AC; kept the inner doors open in block AC; and permitted Plaintiff and other inmates the freedom to move closer to the portable heat sources [*See* Doc. 2 p. 8; Doc. 24-2 p. 6, 7, 9, 16; Doc. 24-3 ¶¶ 19-24; Doc. 24-8 ¶¶ 8-13; Doc. 24-9 ¶¶ 11-15; Doc. 24-10].

Further, Defendant Warren brought in HVAC technicians over the course of two days to attempt to repair the heating unit [Doc. 24-3 ¶¶ 15-17; Doc. 24-4]. Defendant Partin purchased propane a minimum of six times to keep the portable heaters running during the fourteen-day period in which the heating unit was out of service [Doc. 24-9 ¶ 10; Doc. 24-10]. Defendant Watkins implemented cell relocation for Plaintiff and other inmates to remove them from the coldest cell block into warmer cell blocks [Doc. 24-2 p. 6, 9; Doc. 24-8 ¶ 8, 11, 12]. And all three

---

[4] The Court also notes that the evidence shows that Plaintiff did not suffer a physical injury because of the cold conditions [Doc. 24-2 p. 17, 21–22; Doc. 24-13]. And a viable conditions of confinement claim requires the plaintiff to point to a specific physical injury that he suffered in connection with the allegedly violative condition. *See, e.g., Harden-Bey v. Rutter*, 524 F.3d 789, 795–96 (6th Cir. 2008).

10

Defendants oversaw temporary changes to the usual practices, such as allowing inmates to move freely about the affected cell blocks to warm themselves near the portable heaters [Doc. 24-2 p. 16, 7; Doc. 24-3 ¶ 24; Doc. 24-8 ¶13; Doc. 24-9 ¶ 15]. Thus, there is no genuine dispute as to whether Defendants disregarded a substantial risk to Plaintiff. *See, e.g., Wilson*, 961 F.3d at 840 (citing *Farmer*, 511 U.S. at 834, 842). The evidence demonstrates that they did not. Accordingly, Plaintiff cannot sustain his claim for relief against Defendants, and they are entitled to summary judgment.

## IV. Conclusion

For the reasons set forth above, it is hereby **ORDERED** that:

1. Defendants' Motion for Summary Judgment [Doc. 24] is **GRANTED**.

2. This lawsuit shall be **DISMISSED WITH PREJUDICE**, and an appropriate **JUDGMENT** will enter.

3. The Court **CERTIFIES** that any appeal from this decision would not be taken in good faith and would be totally frivolous, and therefore, Plaintiff is **DENIED** leave to proceed *in forma pauperis* should he choose to appeal. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

**SO ORDERED.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE